Glenn **HUSLANDER** and Adeline Huslander, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

Civ. No. 10069.

United States District Court
W. D. New York.
Sept. 28, 1964.

Etkind & Golos, Elmira, N. Y. (Max Etkind, Elmira, N. Y., of counsel), for plaintiffs.

John T. Curtin, U. S. Atty. (Thaddeus S. Zolkiewicz, Buffalo, N. Y., of counsel), for defendant.

HENDERSON, District Judge.

At approximately 1:30 p. m. on January 13, 1961, while the plaintiff, Adeline Huslander, was kneeling on the floor in her home at 400 Jefferson Street, Elmira, New York, a sonic boom from an aircraft broke a windowpane near her and she sustained certain personal injuries. Following a denial of her claim for compensation under the Military Claims Act, this action, under the Federal Tort Claims Act, was commenced.

Claiming that the exception to the Federal Tort Claims Act found in Title 28 U.S.C. § 2680(a) precludes suit in this case, the Government moves for summary judgment. As applicable to this case, section 2680(a) bars:

"Any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

With respect to the application of this section, the following excerpts from the Supreme Court's opinion in Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) should be noted:

"One only need read § 2680 in its entirety to conclude that Congress exercised care to protect the Government from claims, however negligently caused, that affected the governmental functions." 346 U.S. at page 32, 73 S.Ct. at page 966. * * * "It excepts acts of discretion in the performance of governmental functions or duty 'whether or not the discretion involved be abused.' Not only agencies of government are covered but all employees exercising discretion. It is clear that the just-quoted clause as to abuse connotes both negligence and wrongful acts in the exercise of the discretion because the Act itself covers only 'negligent or wrongful act or omission of any employee', 'within the scope of his office' 'where the United States, if a private person, would be liable'. 28 U.S.C. § 1346(b), 28 U.S.C.A. § 1346(b)." 346 U.S. at page 33, 73 S.Ct. at page 966–967

While an act or omission involving discretion in the performance of a discretionary function is excepted, an act or omission, merely incidental to the performance of a discretionary function and not involving the exercise of policy judgment and decision, clearly is not covered. See Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); Rayonier, Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957); Eastern Airlines

v. Union Trust Co., 95 U.S.App.D.C. 189, 221 F.2d 62 (1955); American Exch. Bank of Madison, Wis. v. United States, 257 F.2d 938, 78 A.L.R.2d 879 (7th Cir. 1958); United States v. Hunsucker, 314 F.2d 98 (9th Cir. 1962); White v. United States, 317 F.2d 13 (4th Cir. 1963); Bulloch v. United States, 133 F.Supp. 885 (D.Utah 1955).

That authorization of supersonic flights over the continental United States was the exercise of a discretionary function is clearly established by the affidavit of General Curtis E. LeMay which states in part:

"In my capacity as Chief of Staff, I am also a member of the Joint Chiefs of Staff which reports directly to the Secretary of Defense and to the Commander-in-Chief, the President of the United States. One of my duties requires the initiation and maintenance of policies, programs and procedures as are determined by the Commander-in-Chief, the Secretary of Defense and the Joint Chiefs of Staff to be necessary to constantly maintain and improve the defensive and deterrent capabilities of the United States Air Force. Maintenance of world peace is directly affected. Within this framework, training requirements for air crews are established and enforced by issuance of various Air Force directives. These are issued 'by order of the Secretary of the Air Force.' These directives are then supplemented by directives issued by Major Air Commands and all subordinate echelons of command down to and including squadrons.

"After long consideration of public safety and convenience, and thorough investigation of all the risks involved, it was determined necessary in the interest of national defense to promulgate training directives and procedures for interceptor flights simulating as closely as possible anticipated wartime defensive situations. In the interest of public safety 'and convenience,' supersonic interceptor flights over populated areas of the United States are kept to an absolute minimum, subject, however, to the occasional need to perform such flights on actual intercept of unidentified aircraft who might be hostile, or as a part of training requirements simulating such situations in order to achieve full defense capabilities. Such flights, when necessary regardless of proximity to populated areas of the United States, are performed in accordance with directives designed to minimize public inconvenience and annoyance consistent with the national interest.

"Such flight training requirements constitute a unique and essential government activity devoted to the preservation and maintenance of national security and the freedom of the United States and the free world. It would be impossible for the Air Force to perform the missions assigned to it by the Commander-in-Chief without flying our aircraft at supersonic speeds, thus creating the phenomenon known as 'sonic boom.' Stated in its most simple terms, pilots cannot be trained to engage the supersonic aircraft of the enemy unless they are permitted to train while flying their aircraft at similar speeds."

Additional affidavits submitted by the Government establish that at least three aircraft engaged in supersonic flight near the plaintiffs' home at approximately the time in question. The affidavits also indicate that Air Force regulations governing such flights were fully complied with. Of course, at this stage in the proceedings the plaintiffs are unable to dispute the accuracy of the statements contained in these affidavits. Therefore, unless the act or omission producing the sonic boom necessarily falls within the exception, the motion must be denied.

In Dalehite v. United States, supra, the Supreme Court found it unnecessary to define precisely where discretion ends.

However, at pages 35 and 36 of its opinion in 346 U.S., at page 968 of 73 S.Ct. the Court stated:

"* * * 'discretionary function or duty' * * * includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. *Where there is room for policy judgment and decision there is discretion.* It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." [Emphasis added.]

█ The plaintiffs argue that they are entitled to ascertain whether established policies and procedures were adhered to in this case. This is true only if "subordinates," not authorized to exercise policy judgment and decision, are involved when an aircraft enters supersonic flight.

█ On January 13, 1961, Air Force Regulation No. 55-34, dated July 27, 1960, and entitled "Reducing Flight Disturbances That Cause Adverse Public Reactions," was in effect. Included in that regulation is a "Check List of Protective Measures" governing "Sonic and Supersonic Flights" and also "Sonic Booms." Read in conjunction with the affidavits submitted in support of this motion, the following introductory paragraph establishes that the various command levels are vested with discretion and judgment even to the extent of permitting departure from the general guides contained in the regulation:

"Commanders should use the check list below in planning the maximum protection for civilian communities. The measures outlined should be used whenever feasible. Commanders are also urged to take any other action they consider advisable to carry out the purpose of this regulation."

It further appears from the affidavits that aircraft are monitored from the ground and are cleared for supersonic flight either by computor or voice command. In the court's opinion, recognizing the nature of the military establishment, the actions in monitoring and ordering an aircraft to supersonic flight necessarily involve the exercise of delegated policy judgment and discretion and therefore fall within the exception provided in section 2680(a).

The possibility remains that an individual pilot might elect, for one reason or another, to undertake supersonic flight. Regulation No. 55-34 provides in part:

"Sonic Booms"

"Must not be intentionally performed except:

\* \* \*

"(5) in an emergency when in the judgment of the pilot safety justifies a deviation from this general policy."

---

It is apparent, therefore, that an aircraft Commander, acquainted with the general policy in this area, also is vested with a considerable degree of discretion as to the necessity for undertaking supersonic flight.

In this area, directly involving national security, it, of course, is not surprising that policy judgment and decision reach those lower levels of command which bear a heavy responsibility. While this decision points up the necessity for alternative means of honoring valid claims against the Government, it also avoids a quagmire of varying results under the Federal Tort Claims Act which

# 1008

is dependent upon local law.[1] Having concluded that this case necessarily falls within the discretionary function exception, the Government's motion is granted.

So ordered.

1. See Comment, Federal Liability for Sonic Boom Damage, 31 So.Cal.L.Rev. 259 (1958).