**William G. WARD, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 67–440.**

United States District Court,
W. D. Pennsylvania.

Sept. 17, 1971.

**370**

Fred W. Dunton, Stein & Winters, Pittsburgh, Pa., for plaintiff.

Thomas A. Daley, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION and ORDER

McCUNE, District Judge.

The instant suit for personal injuries was initiated in April of 1967. Jurisdiction is predicated on 28 U.S.C.A. § 1346(b), the Federal Tort Claims Act. From then until March of 1971, the proceedings were stayed on motion of the plaintiff pending administrative disposition of plaintiff's claim under The Military Claims Act, 10 U.S.C.A. § 2733.[1] Following denial of that claim, plaintiff caused the stay to be lifted. The defendant has moved for summary judgment asserting the discretionary function exception, 28 U.S.C.A. § 2680(a), to the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b).[2] Plaintiff has countered with a motion for partial summary judgment in an effort to establish absolute liability.

Plaintiff's injuries were incurred on April 9, 1965, when an auto on which he was working fell on him. The plaintiff alleges that a sonic boom created by an aircraft operated by defendant caused the auto to fall. The complaint asserts several theories of liability. Consideration of these various theories is however unnecessay to disposition of the government motion. That motion is grounded on the discretionary function exception, which if applicable is a complete bar to suit under the Tort Claims Act. Plaintiff's motion on the other hand must be denied unless defendant's decision to conduct supersonic flights imposed absolute liability for resulting damage. The plaintiff's motion, in other words, seeks a ruling that if defendant's flights caused the damage, defendant is liable regardless of fault.

Defendant has submitted certain affidavits in support of its motion. No counter-affidavits have been forthcoming from plaintiff. Plaintiff however

---

1. "(a) Under such regulations as the Secretary concerned may prescribe, * * * the Judge Advocate General of an armed force under his jurisdiction, * * * may settle and pay in an amount not more than $15,000, a claim against the United States for—

     *       *       *       *       *

   (3) personal injury or death; either caused by a civilian officer or employee of that department or a member of the Army, Navy, Air Force, or Marine Corps, * * * acting within the scope of his employment * * *" 10 U.S.C.A. § 2733.

   The notice from the Air Force rejecting plaintiff's claim states that after in-vestigation the Air Force concluded that plaintiff's injury was not the result of a sonic boom.

2. The pertinent part of § 2680 reads as follows:
   "The provisions of this chapter and section 1346(b) of this title shall not apply to—
   (a) Any claim based upon an act or omission of an employee of the Government * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C.A. § 2680(a).

has made objection to the defendant's affidavits on the ground that they do not meet the requirements of Rule 56(e) of the Federal Rules of Civil Procedure, requiring affidavits to be based on personal knowledge.

The affidavits presented were executed by General John P. McConnell, Chief of Staff of the Air Force, General Joseph J. Nazzaro, Commander-in-Chief of the Strategic Air Command and Colonel Hugh B. Robertson, Jr., who at the time of plaintiff's injury was Deputy Commander for Operations, 305th Bombardment Wing.

A discussion of each affidavit is in order.

The affidavit of General McConnell states in part:

"As Chief of Staff, I am also a member of the Joint Chiefs of Staff which reports directly to the President of the United States. The Commander-in-Chief, the Secretary of Defense, the Joint Chiefs of Staff and I determine policies, programs and procedures necessary to constantly maintain and improve the defense and deterrent capabilities of the United States Air Force. * * * Within this framework it was determined necessary in the national interests to design and build a bomber capable of flying at supersonic speeds. This bomber is designated * * * the B-58 and has been assigned to the Strategic Air Command for operational use.

"After thorough consideration and investigation of the risks involved, it has been determined necessary in the national interest to train combat air crews in supersonic flights simulating, as closely as possible, conditions and targets in time of war. To accomplish necessary combat training and proficiency, it was determined that supersonic flights over populated areas within the United States were required."

A supersonic flight corridor was established over Pittsburgh for this purpose.

General Nazzaro's affidavit states that pursuant to the policy determination mentioned by General McConnell, General Nazzaro directed the issuance of the regulations requiring supersonic flight training of B-58 air crews. The Pittsburgh Corridor was employed in this regard.

Colonel Robertson's affidavit states that in April of 1965 he was responsible for the performance of the flights directed under the policy described by Generals McConnell and Nazzaro. On the date of plaintiff's injury two such supersonic flights under Colonel Robertson's supervision were conducted in the Pittsburgh Corridor.

The plaintiff has presented no affidavits in support of his counter-motion but relies on Air Force Regulation 55-34 to establish that defendant's conduct constituted ultrahazardous activity and thus imposed liability without fault. Regulation 55-34 is an instruction to Air Force personnel on how supersonic flights are to be conducted so as to keep public inconvenience at a minimum. It states who may authorize such flights; it describes the minimum altitude at which such flights may be conducted; it requires units conducting such flights to keep a record of them on a specified form; and further states that the Air Force must accept responsibility for just claims of civilians injured by sonic booms.

We first must deal with the plaintiff's objection to defendant's affidavits. The affidavits are offered to establish the discretionary function exception which 28 U.S.C.A. § 2680(a) extends to the government and we conclude they are admissible for that purpose. Contrary to the plaintiff's allegation, the affidavits would appear to reflect the personal knowledge of the respective affiants. Each affiant covers an aspect of the decision to conduct supersonic flights and the selection of Pittsburgh as the situs for such flights.

■ It is apparent from the affidavits that both determinations were made

by General McConnell at the Joint Chiefs of Staff level. The matters described by General Nazzaro and Colonel Robertson are the activities of subordinates in executing the basic policy determination. General McConnell's affidavit states that the policy of conducting supersonic flights was premised on the conclusion that national security required such flights. General Nazzaro was in overall command of the units operating the supersonic aircraft. His office was a conduit through which the policy determination flowed to the individual operating units, *e. g.*, Colonel Robertson's 305th Bombardment Wing. Colonel Robertson was the direct supervisor charged with the reponsibility of seeing that the policy was carried into execution in accordance with guiding regulations, including Air Force Regulation 55-34. In this capacity he caused the planning and performance of two supersonic flights over the Pittsburgh area on April 9, 1965. This is corroborated by Exhibit "D" to the defendant's motion for summary judgment, the log book which Regulation 55-34 required the 305th Bombardment Wing to keep. It is our view that such a record book would qualify as a business record. The 305th was in the "business" of conducting supersonic flights and this log is a record of both what flights were conducted and the manner in which they were conducted.

The discretionary function exception, 28 U.S.C.A. § 2680(a), was examined at length by the Supreme Court in Dalehite v. United States.[3] *Dalehite* was a death action arising from the 1946 Texas City disaster. The Court applied the discretionary function exception.

The Texas City disaster resulted from the explosion of several thousand tons of fertilizer grade ammonium nitrate. The material was loaded for export as part of a government program for feeding occupied nations after World War II. Ammonium nitrate is a prime ingredient in the manufacture of explosives. A particular grade of the same material is useful as fertilizer. In order to produce sufficient quantities of ammonium nitrate for its overseas fertilizer program, toward the end of World War II the government began diverting ammonium nitrate capacity not required for ordinance production to the production of the fertilizer grade product. The production for this purpose was carried on in government plants under supervision of the Army's Ordinance Branch. The material that exploded in Texas City was produced, packed and shipped as part of this government program. The district court found that the government was negligent in deciding to proceed with the program and further that the persons charged with carrying out the program were negligent in the manner in which they caused the packing, shipping, etc., to be accomplished. The Supreme Court however held that the United States could not be held liable under the Federal Tort Claims Act. Whether the injury resulted from the planning or the execution was not material.

"It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the discretionary function or duty that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of the programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." Dalehite v. United States, 346 U.S. 15, 35, 73 S.Ct. 956, 968, 97 L.Ed. 1427.

In arriving at this conclusion the Court engaged in a definitive study of the Tort Claims Act and its exceptions starting with sovereign immunity. Rec-

3.   346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

ognizing as fundamental the concept that if it so desires the sovereign can bar all from obtaining redress in the courts simply by standing on its traditional immunity, the Court concluded that the sovereign can limit any waiver of such immunity in whatever fashion it sees fit. The history of the Federal Tort Claims Act and its exceptions, as analyzed by the Court in *Dalehite*, shows that what Congress intended was to allow the government to be sued for common law torts committed by government employees in the course of their employment. The *exceptions* were enacted to protect the political decisions of the sovereign from review in tort suits.

Certain dicta in *Dalehite* implied that something akin to the distinction found in municipal corporation law between "governmental" and "proprietary" activities might be a guide to the construction of the discretionary function exception. This view was subsequently expressly rejected by the Court in Rayonier, Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1956). There the Court held that the discretionary function exception did not cover the forest fire fighting activities of the United States Forest Service. The Forest Service had by contract with the State of Washington agreed to take on the responsibility for forest fire fighting on certain federal lands. A fire occurred which was dealt with by Forest Service personnel. However, after the fire, no action was taken to extinguish smoldering areas. Winds caused a rekindling and the fire spread to plaintiff's property causing widespread damage.

The discretionary function exception has been dealt with in several cases involving sonic boom damage. Until the recent decision of the Fourth Circuit in Nelms v. Laird,[4] the cases that have dealt with the issue have uniformly held that the exception applied to the Air Force's conduct of training exercises. In *Nelms*, the Fourth Circuit held that

supersonic flight training of air crews by the Air Force is not within the discretionary function exception of the Federal Tort Claims Act. The court felt that authorization of supersonic flights by the Commander-in-Chief of S.A.C. was the exercise of a discretionary function.

"The defense needs of the nation and the degree of air crew competence required to meet those needs are precisely the kind of decision that the Congress intended should not be second-guessed in a tort action." Nelms v. Laird, 442 F.2d 1163.

However the existence of Air Force Regulation 55–34, in the view of that court, so restricted the exercise of that discretion as to bring the supersonic flight situation within the reasoning of Somerset Seafood Co. v. United States, 193 F.2d 631, (4th Cir. 1951). The *Somerset* case involved the stranding of an oyster boat on a wreck in the Chesapeake Bay. The plaintiff had alleged negligence in the creation and marking of the wreck. The *Somerset* court held that the Wreck Removal Acts [5] imposed a mandatory duty to mark or remove wrecks and therefore that the discretionary function exception was inapplicable. The *Nelms* court viewed the decision to conduct supersonic flights as protected, but held that Air Force Regulation 55–34 imposed a mandatory duty to protect civilians just as the Wreck Acts had been construed in *Somerset* with regard to the marking of wrecks. In holding *Dalehite* inapposite to the sonic boom situation the 4th Circuit made a distinction between what it viewed as the obvious danger from sonic booms and the improbability of harm in *Dalehite*. This distinction is in our opinion not well founded. The majority in *Dalehite* did not rely on the unforeseeability of the fertilizer exploding. That the obvious and very real danger presented by fertilizer grade ammonium nitrate was before the Supreme Court in that case is appar-

---

4. Nelms v. Laird, 442 F.2d 1163 (4th Cir. 1971).

5. 33 U.S.C.A. §§ 409, 414, 14 U.S.C.A. § 86.

ent from the dissent of Mr. Justice Jackson.[6]

The *Nelms* decision also dealt with the applicability of ultrahazardous activity liability to the Air Force's supersonic training. Relying on their previous decision in United States v. Praylou,[7] the Fourth Circuit concluded that the United States was absolutely liable in situations where state law imposed strict liability on private parties.[8] After examining the state law, the court concluded that the rules governing blasting activities should be applied to the creators of sonic booms thus imposing strict liability.

Although noting the existence of contrary opinions, the *Nelms* court did not discuss them. Since these opinions holding that the Air Force's activities are protected by the "discretionary function exception" are much like, we will discuss them as a group. The following cases: Maynard v. United States, 430 F.2d 1264 (9th Cir. 1970), McMurray v. United States, 286 F.Supp. 701 (W.D.Mo.1968); Schwartz v. United States, 38 F.R.D. 164 (D.N.D.1965); and Huslander v. United States, 234 F.Supp. 1004 (W.D. N.Y.1964), all involved a motion for Summary Judgment. Each case involved personal injuries or property damage purported to have been caused by Air Force created sonic booms and in each the discretionary function exception was held applicable. All discussed Air Force Regulation 55–34 but none alluded to the *Somerset* reasoning. The *Huslander* decision held that under the Air Force Regulation 55–34, even the actions of the pilots of individual aircraft would be encompassed by the discretionary function exception. The other courts did not consider the question of pilot negligence since in each it was stipulated that the flights were properly conducted in accordance with applicable regulations. The evidence before us is that the flights in the instant case were conducted in accord with regulations. The plaintiff has not however had an opportunity to conduct such investigation as might enable him to attack the accuracy of the records which purport to show that applicable regulations were observed.

■■ We conclude that whether or not there was compliance with Air Force Regulations is not dispositive. These regulations lay down the guidelines within which an activity directed by national defense policy is to be conducted. Regulations such as 55–34 do not purport to define what is or is not negligence in the conduct of supersonic flights, nor do they impose absolute liability on the government for damage caused by such flights. We do not believe that the Air Force by its internal regulations can waive the government's statutory exception from the Tort Claims Act. Further, in the absence of a statute, such as the Tort Claims Act, we do not believe that the Air Force could by regulation allow suits against the government for torts committed by Air Force personnel. This regulation (55–34) is addressed to personnel dealing with claims stemming from supersonic operations. It is a directive to them to be cooperative in settling claims filed under the Military Claims Act, 10 U.S. C.A. § 2733. Without the broad authority of The Military Claims Act the Air Force could not properly authorize claim settlement by such regulations. Regulation 55–34 in our view is an implementation of the Military Claims Act. Like that Act it directs payment regardless of fault *or the government's amenability to suit.* The sole criteria for payment is causation. While the Military Claims

---

6. Dalehite v. United States, 346 U.S. 15 at 50–51, 73 S.Ct. 956, 97 L.Ed. 1427 (dissenting opinion of Justice Jackson).

7. 208 F.2d 291 (4th Cir. 1953), *cert. denied,* 347 U.S. 934, 74 S.Ct. 628, 98 L.Ed. 1085 (1954).

8. *Contra,* see, Gowdy v. United States, 412 F.2d 525 at 535 (6th Cir. 1969) *cert. denied,* 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425, *rehearing denied,* 396 U.S. 1063, 90 S.Ct. 750, 24 L.Ed.2d 756 (1970), and Grant v. United States, 326 F.Supp. 843 at 846 (W.D.Okl.1970).

Act and Regulation 55-34 may eliminate the issue of fault from the administrative disposition of claims, we conclude that they do not eliminate the requirement of the Tort Claims Act that the act or acts upon which a suit is predicated be "wrongful."

 We hold simply that Regulation 55-34 relates only to the Military Claims Act and has no bearing on suits brought under the Federal Tort Claims Act. The decision of the government not to pay a particular claim filed under the Military Claims Act and pertinent regulations is not even germane to a subsequent suit under the Tort Claims Act on the same claim. It is the Tort Claims suit that for the first time raises questions about negligent conduct and the applicability or nonapplicability of the statutory exceptions such as the discretionary function provision of 28 U.S.C. A. § 2680(a). In such a suit the government may assert such exceptions irrespective of any regulations issued pursuant to The Military Claims Act directing payment on mere showing of causation.

We are left with the real question, that is, whether the decision to conduct supersonic training flights by the Air Force pursuant to a determination that such flights were essential to the maintenance of our defense, is discretionary within the meaning of the exception, 28 U.S.C.A. § 2680(a). We hold that the individuals involved in the planning and execution of such flights were performing discretionary functions or duties and therefore the consequences of their performance are not actionable under the Federal Tort Claims Act.

In our opinion the action of the Air Force in the instant case is analogous to that of the Army in *Dalehite* rather than of the Forest Service in *Rayonier*.

*Dalehite* dealt with a disaster that occurred as an incident to the execution of national policy. *Rayonier* dealt with negligence by a government agency in the performance of a contract. Assuming the plaintiff's injury was caused by a supersonic training flight, it is clear that such injury occurred as an incident to the execution of a policy necessary to our nation's security. The general who ordered the flights, the colonel who planned and supervised the flights and the officers who flew the aircraft were all required to exercise their judgment. Where, in the execution of national policy, there is room for judgment the discretionary function exception applies.

Having concluded that the discretionary function exception applies we cannot grant plaintiff's motion. Instead the defendant's motion for summary judgment will be granted.

It is so ordered.