Mrs. Lennell Wells **ABRAHAM**, wife of Bernard Abraham, now deceased, et al., Plaintiffs-Appellants,

v.

**UNITED STATES** of America, Defendant-Appellee.

No. 71–2257.

United States Court of Appeals, Fifth Circuit.

Sept. 7, 1972.

E. P. Lobrano, Jr., of Satterfield, Shell, Williams & Buford, Jackson, Miss., James H. Morrison, New Orleans, La., Ronald A. Curet, Hammond, La., for plaintiffs-appellants.

Robert E. Hauberg, U. S. Atty., Joseph E. Brown, Jr., Asst. U. S. Atty., Jackson, Miss., Alan S. Rosenthal, Robert E. Kopp, L. Patrick Gray, III, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

COLEMAN, Circuit Judge:

This is a case in which the widow and children of Bernard Abraham, deceased, sued the United States under the Federal Tort Claims Act. The complaint charged that a United States Air Force plane caused a severe sonic boom over the City of McComb, Mississippi, on February 16, 1968, which, in turn, caused the mill and office of the McComb Milling Company to explode and burn, killing Mr. Abraham.

The district court granted the government's motion for summary judgment. It held the claim to be barred by the "discretionary function" exception to the Federal Tort Claims Act, 28 U.S.C., § 2680(a), which provides that the Act shall not apply to:

> "Any claim . . . based upon the exercise or performance or the failure to exercise or perform a *discretionary* function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." (Emphasis supplied).

Appellants in this Court urged recovery on a theory of *strict liability* for the consequences of ultrahazardous activities carried out by the government and, secondly, that the actual operation of government aircraft can give rise to an actionable wrong where there has been wrongful or "operational mismanagement" on the part of the pilot or his superiors.

■ After this appeal reached us, the Supreme Court decided the sonic boom case in Laird v. Nelms, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972).[1] The Court unequivocally held that the Federal Tort Claims Act does not authorize claims, suits, or liability based on strict liability for ultrahazardous activity.

Therefore, the claim as to "operational mismanagement" is all that remains of the present appeal.

To support its motion for summary judgment the government offered affidavits showing that the operational training flights of the supersonic aircraft, including the flight in question, were authorized and conducted in accordance with the direction of General Bruce Holloway, Commander of the Strategic Air Command; that in the exercise of the authority and discretion vested in General Holloway and his superiors these supersonic flights are authorized as essential to the security of the United States and are flown under controls prescribing altitudes, routes, and speeds; that the route flown by the aircraft was plotted at headquarters, Ninth Strategic Reconnaissance Wing, Beale Air Force Base, California, in accordance with guidelines contained in directives of higher headquarters; that the pilot of the craft was briefed as to the routes, altitudes, and speeds to fly and was given no authority to deviate from this flight path except in an emergency.

The pilot of the aircraft in question likewise swore that the flight was made in strict accordance with the instructions given him as to route, altitude, and speed, as well as in compliance with Air Force Regulation 55–34 entitled "Reducing Flight Disturbances That Cause Adverse Public Reactions".

The affidavit of Colonel Jack Warfield, Jr., filed on behalf of appellants,

---

1. See, also, a preceding decision of the Supreme Court in this field, Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1952).

disclosed that he was totally familiar with aircraft sonic booms, and specifically with the SR–71 (the type of aircraft flying the mission over McComb, Mississippi). The affiant stated that the Air Force regulations in question "impose strenuous restrictions at the *operational* level of responsibility as to the duty of a pilot not to generate sonic booms in populace areas". Based on his personal knowledge, education, background, experience, and expertise on the subject, including personal knowledge of both the planning and operational levels of the Strategic Air Command, which includes SR–71 planning, he was of the opinion that "mismanagement, or breach of imposed standard of care, occurred at the *operational*, as opposed to the *planning* level of the flight of the SR–71 . . . ". Colonel Warfield offered no opinion as to whether mismanagement at the operational level was a proximate cause of the sonic boom.

■ Neither the Supreme Court nor this Court has decided whether military supersonic flights constitute a discretionary function exception, 28 U.S.C. § 2680(a). However, other jurisdictions have clearly held that they do, Maynard v. United States, 9 Cir. 1970, 430 F.2d 1264; Ward v. United States, 331 F. Supp. 369 (W.D., Penn., 1971); McMurray v. United States, 286 F.Supp. 701 (S.D., Mo., 1968); Schwartz v. United States, 38 F.R.D. 164 (D., N.D. 1965); Huslander v. United States, 234 F.Supp. 1004 (W.D., N.Y., 1964).

We agree with this strong weight of authority.

This reduces the problem to one of whether the pilot of the aircraft flying over McComb deviated from the instructions of his superiors and, in the words of the Supreme Court in *Laird*, "negligently or wrongfully" caused the injuries in question in a manner that would defeat the immunity of the discretionary function rule.

The government's affidavits stated, *as a fact*, that the pilot's superiors authorized and planned the flight, including route, speed, and altitude. The pilot swore that he did not deviate, in any respect from the plan.

The affidavit of Colonel Warfield merely stated *an opinion*, expert though it be, that mismanagement did occur at the operational level, without describing the nature of the mismanagement or offering the view that the mismanagement was the cause of the sonic boom.

We think this state of the pleadings (and summary judgment affidavits) falls squarely within the rationale of Schwartz v. United States, 38 F.R.D. 164 (D., N.D., 1965):

"In no way does Plaintiff controvert the statements made in the three affidavits referred to. If Plaintiff had countered by offering the affidavit of some individual who claimed to have seen Defendant's aircraft being operated in a reckless manner, or below the minimum altitude prescribed, then perhaps he could be said to have shown ' * * * that there is a genuine issue for trial', as contemplated by Rule 56(e). Such, however, is not the case. The affidavits and other documents on file herein affirmatively show that the aircraft involved, on the day in question, were operated in conformity with all existing regulations."

■ Motions for summary judgment are authorized only when there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law", Fed.R. Civ.P. 56(c). Experience shows that summary judgments suffer a rather high rate of mortality, but in this instance we must hold as a matter of law that Colonel Warfield's opinion affidavit as to operational mismanagement failed to raise a genuine issue of material fact as to the commission of a wrongful or negligent act, not covered by the discretionary function section of the Tort Claims Act.

In the light of these considerations, the judgment of the District Court is

Affirmed.