William G. WARD, Appellant,

v.

UNITED STATES of America.

Kenneth V. MONTAG and Alice L. Montag, his wife, Appellants,

v.

UNITED STATES of America.

Nos. 71-2041, 71-2148.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) Nov. 16, 1972.

Decided Jan. 9, 1973.

William R. Tighe, Pittsburgh, Pa., for appellants in Nos. 72–2041, 71–2148.

Robert E. Kopp, Dept. of Justice, Washington, D. C., for appellees in Nos. 71–2041, 71–2148.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for appellees in No. 71–2041.

James M. Seif, Pittsburgh, Pa., for appellee in No. 71–2041.

Alan S. Rosenthal, Washington, D. C., for appellees in Nos. 71–2041, 71–2148.

Before ALDISERT, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Both appeals are from orders of the district court granting summary judgment in favor of the United States in actions brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., for injuries allegedly suffered as a result of sonic booms caused by a United States Air Force aircraft. Appellant Ward alleges that he was injured when an automobile under which he was working fell on him as a result of a sonic boom. Appellants Montag claim that a sonic boom caused extensive damage to their home and garage.

The complaints asserted a number of alternative theories of liability including strict liability and negligence. In both actions the Government moved for summary judgment on the ground that the activities in question fell within the discretionary function exception to the Fed-

eral Tort Claims Act. 28 U.S.C. § 2680 (a).[1]

In support of that motion the Government filed three affidavits. The affidavit of General John P. McConnell, Chief of Staff, United States Air Force, stated that the highest civilian and military authorities, he included, had determined that the security of the Nation depended on having supersonic bombers, and that the combat crews for such aircraft had to be trained in flights over populated areas of the United States so that actual combat conditions could be simulated. General Joseph J. Nazzaro, Commander-in-Chief, Strategic Air Command, averred that he had issued regulations requiring supersonic training of B–58 air crews and that an air corridor over the Pittsburgh area was used for this purpose. Colonel Hugh B. Robertson, Jr., Deputy Commander for Operations, 305th Bombardment Wing, Strategic Air Command, averred that on the dates on which the plaintiffs' personal injuries and property damage are said to have occurred, some 37 flights took place, pursuant to the regulations referred to by General Nazzaro, in the Pittsburgh area air corridor.

Both appellants, based upon the admissions set forth in the Government's affidavits, filed cross motions for partial summary judgment of liability based on strict liability. Both appellants also filed alternative motions, pursuant to Fed.R.Civ.P. 56(f) for a continuance of the Government's motions for summary judgment for the reason that the plaintiffs could not at that time present by affidavits facts essential to justify their opposition to the motions, and that they desired, for that purpose, time for additional discovery.

The district court granted the Government's motion for summary judgment in the *Ward* case,[2] and on the authority of *Ward,* shortly thereafter in the *Montag* case. These appeals followed. We reverse.

The district court based its decision on the discretionay function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), and on the Supreme Court's decision in Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). It also rejected the appellants' contention that they could recover for sonic boom damage on a strict liability theory.

■ The Supreme Court has never held that military supersonic flights fall within the discretionary function exception. Two courts of appeals have held that they do.[3] *See* Abraham v. United States, 465 F.2d 881 (5th Cir. 1972); Maynard v. United States, 430 F.2d 1264 (9th Cir. 1970) (per curiam). In view of the interpretation given § 2680(a) in Dalehite v. United States, *supra,* and the legislative history therein discussed, we conclude that the uncontradicted affidavits of Generals McConnell and Nazzaro and of Colonel Robertson were sufficient to establish that the flights over the Pittsburgh corridor during the critical period fell within the discretionary funtion exception. *See* 346 U.S. at 27–30, 73 S.Ct. 956.

■ The plaintiffs' strict liability contention is foreclosed by a decision of the Supreme Court announced after the district court's opinion. In Laird v. Nelms, 406 U.S. 797, 92 S.Ct. 1899, 32

---

1. 28 U.S.C. § 2680(a) provides in pertinent part:

 "The provisions of this chapter and section 1346(b) of this title shall not apply to—

 (a) Any claim based upon . . . the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

2. Ward v. United States, 331 F.Supp. 369 (W.D.Pa.1971).

3. In addition to the decision appealed from, three other district courts have held that sonic boom flights fall within 28 U.S.C. § 2680(a). McMurray v. United States, 286 F.Supp. 701 (W.D.Mo. 1968); Schwartz v. United States, 38 F.R.D. 164 (D.N.D.1965); Huslander v. United States, 234 F.Supp. 1004 (W.D. N.Y.1964).

L.Ed.2d 499 (1972), the Court, in a sonic boom case, held that the Federal Tort Claims Act does not permit the imposition of liability upon the Government in the absence of negligence or other form of misfeasance. State laws permitting recovery on a strict liability theory for extrahazardous activities are not a basis for recovery, under the Act, against the United States.

■ But neither Dalehite v. United States, *supra*, nor Laird v. Nelms, *supra*, end the inquiry. The plaintiffs here asserted negligence as well as strict liability. In *Dalehite* the Court distinguished negligence at the planning level, as to which 28 U.S.C. § 2680(a) applied, from negligence at the operational level. 346 U.S. at 42, 73 S.Ct. 956. For example, ordering an army maneuver is a discretionary function, but the negligent operation of an army vehicle during such a maneuver is not. The same distinction is applicable to the operation of aircraft. The district court disregarded this distinction, holding that the discretionary function exception barred recovery for negligence of individuals involved both in the planning and in the execution of discretionary flights.[4] 331 F.Supp. at 375. This gives too broad a scope to § 2680(a).

■ While the government affidavits here were sufficient to show that the decision to send supersonic flights through the Pittsburgh air corridor at the critical time was made in the exercise

of a discretionary function, they were clearly insufficient to rule out the possibility of operational negligence. Indeed the affiants, not being present, could have had no personal knowledge as to the manner in which the flights actually were conducted. See Fed.R.Civ.P. 56(e). There were no affidavits by the pilots of the flights.

In Abraham v. United States, *supra,* the Fifth Circuit, recognizing the distinction between planning negligence and operational negligence, affirmed the grant of summary judgment for the Government because the uncontradicted affidavits of the pilots eliminated the possibility of operational negligence. There was not, as here, so far as Judge Wisdom's opinion discloses, a motion pursuant to rule 56(f) for a continuance to permit further development of the facts. Since in this case there were no pilot affidavits and there was a motion pursuant to rule 56(f) for such a continuance, we must reverse the grant of summary judgment. Where, as here, the facts respecting possible operational negligence are solely in the possession of those in actual control of the aircraft,[5] a motion for a continuance of a motion for summary judgment for purposes of discovery should, we think, ordinarily be granted almost as a matter of course. *See., e. g.,* Robin Construction Co. v. United States, 345 F.2d 610, 613–614 (3d Cir. 1965) ; United States v. Halpern, 260 F. 2d 590, 591 (3d Cir. 1958) ; Toebelman

---

4. The district court noted:
 "We hold that the individuals involved in the planning and *execution* of such flights were performing discretionary functions or duties and therefore the consequences of their performance are not actionable under the Federal Tort Claims Act." 331 F.Supp. at 375 (emphasis added).

 *Compare* the above *with* Wenninger v. United States, 234 F.Supp. 499 (D.Del. 1964), aff'd per curiam, 352 F.2d 523 (3d Cir. 1965), where the court remarked:

 "The Government has properly conceded that § 2680(a) affords it no protection against plaintiffs' claim that the

pilot of the C–124 was negligent. The discretion exercised by a pilot in flying an airplane is clearly at the operational level and an abuse thereof or its negligent exercise is outside of the § 2680(a) jurisdictional exception. See Wildwood Mink Ranch v. United States, 218 F. Supp. 67 (D.Minn.1963) ; Dahlstrom v. United States, 228 F.2d 819 (8th Cir. 1956)."

5. The district court opinion observes:
 "The plaintiff has not however had an opportunity to conduct such investigation as might enable him to attack the accuracy of the records which purport to show that applicable regulations were observed." 331 F.Supp. at 374.

v. Missouri-Kansas Pipe Line Co., 130
F.2d 1016 (3d Cir. 1942).

The judgments of the district court
will be reversed and the cases remanded
for further proceedings consistent with
this opinion.