# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 8, 2008                    Decided July 8, 2008

No. 07-7014

UNITED STATES EX REL. K & R LIMITED PARTNERSHIP,
APPELLANT

v.

MASSACHUSETTS HOUSING FINANCE AGENCY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 99cv01343)

———

*Carl A.S. Coan, Jr.* argued the case for appellant. With
him on the briefs was *Carl A.S. Coan III.*

*Michael J. Tuteur* argued the cause for appellee. With
him on the brief were *Lawrence M. Kraus* and *Stuart M. Gerson.*

Before: TATEL, BROWN, and KAVANAUGH, *Circuit
Judges.*

Opinion for the Court filed by *Circuit Judge* Brown.

BROWN, *Circuit Judge*: Forty years ago Jimi Hendrix
trilled his plaintive query: "Is this love, baby, or is it … [just]
confusion?"  JIMI HENDRIX, *Love or Confusion*, *on* ARE YOU

EXPERIENCED (Reprise Records 1967). In this False Claims Act case, we face a similar question involving a mortgage subsidy program initiated in that era: Is this fraud, or is it … just confusion? K & R Limited Partnership says it is the former, alleging that during the last 15 years, MassHousing[1] has knowingly submitted excessive claims for subsidy payments to the federal government. The district court granted summary judgment for MassHousing, *United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46 (D.D.C. 2006), and we affirm because there is no genuine issue as to whether MassHousing knew its claims were false.

Under § 236 of the National Housing Act, the U.S. Department of Housing and Urban Development (HUD), subsidizes mortgage payments for owners of low-income rental housing. 12 U.S.C. § 1715z-1(a). The owner makes monthly payments to its lender as if the yearly interest rate was 1%, and the lender applies to HUD for the difference. *Id.* § 1715z-1(c). MassHousing, which is such a lender, sells tax-exempt bonds to investors and uses the proceeds to finance housing projects as part of its public mission to support affordable housing for low- and moderate-income Massachusetts residents.

In 1993, MassHousing used proceeds from new bonds to "refund" (i.e. redeem or retire) mostly higher interest bonds it used to finance loans, including loans for which MassHousing received interest reduction payments from HUD under § 236. Although MassHousing reaped substantial savings on its debt service, it did not pass along those savings to HUD by reducing its claims for payments. That is the nub of this case.

In relevant part, the False Claims Act (FCA), 31 U.S.C. §§ 3729–3731, imposes liability on "[a]ny person who"

---

[1] Its formal name is Massachusetts Housing Financing Agency.

"knowingly presents" "a false or fraudulent claim for payment or approval" "to an officer or employee of the United States Government," *id.* § 3729(a)(1). MassHousing concedes it is a "person who" presented "claim[s] for payment" to HUD employees. It denies those claims were "false or fraudulent," but agrees that depends on the correct interpretation of the mortgage notes for the loans at issue. On each claim, MassHousing's representative "certifie[d] to the best of his knowledge and belief" that "each interest reduction payment … ha[d] been calculated in accordance with" the applicable agreement. J.A. 122. Such agreements required that the "interest reduction payments" reflect the owners' interest rates on their permanent loans—rates the mortgage notes established. Thus, if the mortgage notes varied the interest rate with MassHousing's debt service, then MassHousing has been over-billing HUD on those loans since 1993. K & R's 2003 estimate of the running total was $28 million, making MassHousing's potential liability around an eye-popping $100 million, *see* 31 U.S.C. §§ 3729(a), 3730(d) (authorizing civil fines, treble damages and, for *qui tam* plaintiffs, expenses including attorneys' fees).

Over the years, MassHousing used several types of notes when financing § 236 housing projects. Each type phrased the payment calculation differently and somewhat awkwardly. Thus, the parties and the district court have spilt much ink in explaining the meaning of these notes, each parsing different language supporting its own "unambiguous" interpretation. K & R insists the notes clearly *vary* the interest rate, while MassHousing, with which the district court agreed, maintains that the notes plainly *fixed* the interest rate once MassHousing financed the loans with long-term bonds. The district court also found that even if unclear, other evidence of the intended meaning is so one-sided no reasonable person could conclude otherwise.

We disagree with the parties and the district court that the mortgage notes are unambiguous. Notes from the '70s calculate mortgage payments using "the net interest cost which [MassHousing] is required to pay from time to time on *bonds to fund or refund the loan*." *E.g.*, J.A. 253 (emphasis added). Those notes also provide "if the rate of interest … shall change from time to time as provided above, the amount of such monthly payments shall be adjusted upward or downward, as the case may be." *E.g.*, J.A. 200.[2] While the parties agree the trigger for changing the interest rate is when MassHousing "refund[s] the loan," they are at a stalemate over the meaning of this phrase.

K & R claims the 1993 bond refund was a loan refund that lowered MassHousing's "net interest costs," requiring MassHousing to reduce mortgage payments. But in MassHousing's view, a bond refund is different from a loan refund. A loan refund supposedly occurs not when MassHousing redeems bonds it used to finance the loans, but when it *designates* bonds to "refund the loan" and recalculates the owner's payments accordingly. Here, MassHousing did not designate the 1993 bonds to refund any of the loans at issue, nor did it recalculate any mortgage payments.

K & R questions the distinction because during a project's construction MassHousing temporarily "fund[ed] and refund[ed] the loan[s]" with short-term bonds it paid periodically with the proceeds from new short-term bonds. In that way, the new bonds "refund[ed] the loan[s]." Similarly, using proceeds from the 1993 bonds, MassHousing redeemed the long-term bonds with which it "fund[ed] … the loans." K & R concludes the 1993 bonds must "refund the loan" like the short-term bonds. But the similarity of these transactions

---

[2] The most recent mortgage notes merely state the monthly mortgage payments or calculate payments using a specific interest rate. K & R's claims do not rely on these mortgage notes.

does not undermine the distinction since MassHousing designated which short-term bonds refunded the loans, and did not so designate the 1993 bonds.

Next, K & R argues that MassHousing's interpretation makes nonsense of the payment calculation. Because MassHousing refunded the bonds it used to finance the loans, those bonds no longer exist. Therefore, MassHousing's "net interest cost" on them is zero, resulting in payments with no interest component. That can't be correct, says K & R, so MassHousing's interpretation must be wrong. However, MassHousing claims to have "fund[ed] … the loan[s]" only once and so the payment calculation applied one time only. MassHousing takes the same position on mortgage notes from the '80s and '90s, which calculate payments using the "interest cost incurred by [MassHousing] on the Funding Bonds"— "bonds issued by [MassHousing] and *designated by it* to fund" a loan. J.A. 247–48 (emphasis added).

Last, K & R says its interpretation is correct because MassHousing added the phrase "from time to time" so MassHousing could change the mortgage interest rate after a bond refund. We find K & R's evidence on this point unclear. It offers a mortgage note that does not use the phrase, and which predates the resolution authorizing the bonds MassHousing used to finance the loans at issue. The resolution allowed MassHousing to refund the bonds, but required MassHousing to ensure existing mortgage payments were sufficient to pay the new bonds it issued. According to K & R, the phrase "from time to time" allowed MassHousing to meet this requirement by changing the mortgage interest rates. However, MassHousing claims it would only undertake a bond refund in circumstances when mortgage payments would always be sufficient, i.e. when market interest rates are lower than its current debt service. Thus, MassHousing says it did not add the phrase to meet the requirement.

On the evidence here, both MassHousing's and K & R's interpretations are plausible. We need not decide which has the better reading, however, because the FCA requires that defendants make false claims "knowingly" by (1) having actual knowledge, (2) acting in deliberate ignorance, or (3) acting in reckless disregard. *See* 31 U.S.C. § 3729(b). To successfully oppose summary judgment, K & R must show that a reasonable factfinder, drawing all "justifiable inferences" from the evidence in K & R's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), could find MassHousing at least recklessly disregarded the falsity of its claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("after adequate time for discovery and upon motion," courts must enter summary judgment "against a party who fails to make a showing sufficient to establish … an element essential to that party's case, and on which that party will bear the burden of proof at trial"). After our *de novo* review of the record, *see Wilson v. CARCO Group, Inc.*, 518 F.3d 40, 41 (D.C. Cir. 2008), we conclude K & R did not make this minimum showing.

Reckless disregard under the FCA is "an extreme version of ordinary negligence." *United States v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997). To show MassHousing was reckless as to the falsity of its claims, K & R points initially to MassHousing's disregard of the "plain language" of the mortgage notes. However, as we discussed, these notes are not "plain," especially the key phrase, "refund the loan." K & R never explains why MassHousing's interpretation of the mortgage notes was unreasonable, much less why its interpretation constituted reckless disregard. While the unreasonableness of MassHousing's interpretation is merely evidence, the absence of which does not preclude a finding of knowledge, *see United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 464 (9th Cir. 1999) (amended opinion), K & R points to nothing else "that might have warned [MassHous-

ing] away from the view it took," *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2216 (2007).

Thus, contrary to K & R's assertion, MassHousing's failure to obtain a legal opinion or prior HUD approval cannot support a finding of recklessness without evidence of anything that might have given it reasons to do so. In fact, the evidence suggests there were no reasons. MassHousing made no secret of the 1993 bond refund and during a HUD audit the next year, MassHousing specifically brought the 1993 refund to HUD's attention, albeit for a somewhat different issue. *Cf. United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 496 (D.C. Cir. 2004) ("if the claimant has told the [government official] pertinent facts that would, in the absence of such disclosure, make a claim fraudulent, it seems that the claimant has not 'knowingly' presented a false claim"). There is no evidence HUD expressed any concerns and, in fact, HUD continued (and continues) to pay MassHousing even after K & R filed this lawsuit. Although the fact the government continues to pay claims might not preclude a finding of knowledge, here that fact at least suggests MassHousing did not act with reckless disregard.

Against all this, K & R merely urges its different reading of the notes, which here falls far short of showing a genuine issue as to whether MassHousing knew its claims were false.

Finally, K & R's evidence of MassHousing's motive to submit false claims—the need to bail itself out of financial trouble—could not in this case support a finding of knowledge, be it actual, deliberate ignorance, or reckless disregard. For its part, MassHousing freely admits it undertook the 1993 bond refund to lower its debt service and receive the same amount of HUD payments. But its eagerness to do so does not mean MassHousing knew it did so unlawfully.

At bottom, K & R and MassHousing simply disagree about how to interpret ambiguous contract language. Given

that and K & R's inability to point to anything "that might have warned [MassHousing] away from the view it took," *Safeco*, 127 S. Ct. at 2216, there is no genuine issue as to whether MassHousing knowingly presented false claims to HUD. We therefore affirm the judgment of the district court.[3]

*So ordered.*

---

[3] We also affirm portions of two discovery orders from which K & R appeals, and we dismiss MassHousing's motion to supplement the appendix. The district court did not abuse its discretion in denying K & R's discovery requests. *See Diamond Ventures, LLC v. Barreto*, 452 F.3d 892, 898 (D.C. Cir. 2006). In addition, we did not need the materials MassHousing proposed to add to the appendix; therefore, its motion to supplement is moot.