# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 4, 2014          Decided August 29, 2014

No. 13-7049

UNITED STATES OF AMERICA, EX REL. BRADY FOLLIARD,
APPELLANT

v.

GOVERNMENT ACQUISITIONS, INC. AND GOVPLACE,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-00719)

*H. Vincent McKnight, Jr.* argued the cause and filed the briefs for appellant.

*Christopher M. Loveland* argued the cause for appellee Govplace. With him on the brief was *Jonathan S. Aronie*.

*Timothy K. Halloran* was on the brief of *amicus curiae* Coalition for Government Procurement. With him on the brief was *Jason N. Workmaster*. *Daniel G. Jarcho* entered an appearance.

Before: KAVANAUGH and WILKINS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: Under the Trade Agreements Act of 1979 (TAA), 19 U.S.C. §§ 2501–2581, the federal government is barred from purchasing products that do not originate from "designated countries." *See id.* § 2512; 48 C.F.R. §§ 25.003, 52.225-5(a) (listing the designated countries). Appellee Govplace sold Hewlett-Packard ("HP") products to the federal government. To determine whether the HP products originated from designated countries, Govplace relied on its distributor, Ingram Micro, which expressly certified that the HP products complied with TAA requirements. Govplace also sold other products to the federal government, but claimed that these products were exempt from TAA requirements.

Appellant Brady Folliard, *a qui tam* relator, brought suit under the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733, alleging that the HP products Govplace sold to the federal government originated from non-designated countries, in violation of the TAA. The FCA imposes liability only if a person "knowingly" makes a false claim. To satisfy the FCA's scienter requirement, Appellant claimed that Govplace acted in reckless disregard to the falsity of its sales to the federal government because Govplace's reliance on Ingram Micro's certification was not reasonable. Appellant also sought discovery regarding the products Govplace claimed were exempt from TAA requirements.

Through a series of orders and opinions, the District Court rejected all of Appellant's claims on the merits and thus granted summary judgment to Govplace, while denying some of Appellant's discovery requests. Appellant challenges some of those rulings. Because we conclude that the District Court

properly exercised its discretion in managing discovery, and that Govplace reasonably relied on Ingram Micro's certification, we affirm.

**I.**

**A.**

Appellee Govplace is a small business provider of IT integration and product solutions, and delivers enterprise IT solutions exclusively to the public sector. J.A. at 467. Govplace has been a recipient of a General Services Administration (GSA) schedule contract ("GSA schedule" or "GSA contract") since August 1, 1999. J.A. 468. The GSA Schedules Program "provides Federal agencies . . . with a simplified process for obtaining commercial supplies and services at prices associated with volume buying." 48 C.F.R. § 8.402. All products sold pursuant to a GSA schedule must comply with the TAA. *See* Trade Agreements, GSA iGuide, https://vsc.gsa.gov/iGuide/iGuide/Trade_Agreements.html (last visited July 11, 2014); J.A. 362. The TAA requires that "only U.S.-made or designated country end products [can] be offered and sold under Schedule contracts." *Id.*; 48 C.F.R. § 25.403(c)(1).

Govplace is not a manufacturer of the products it lists for sale and does not acquire products directly from a manufacturer. J.A. 468. Instead, Govplace acquires products from distributors. J.A. 468. Ingram Micro, the largest technology products distributor, is the distributor from which Govplace acquires the vast majority of the products it sells on its GSA schedule. J.A. 468, 972. Govplace acquires products from Ingram Micro by participating in Ingram Micro's GSA Pass Through Program ("the Program"). J.A. 972-73. According to Ingram Micro, its Program "helps solution

providers obtain Letters of Supply from manufacturers, a requirement to include products on a GSA Schedule," and "helps resellers maintain their GSA contracts by regularly passing through manufacturer-certified information such as updated pricing and product documentation." J.A. 972. For example, in providing Govplace with the "current GSA product/price list for Hewlett Packard" in January 2007, Ingram Micro "passe[d] through" five manufacturer certifications, including: "Products offered by the manufacturer are compliant with the Trade Agreements Act." J.A. 516. Through its participation in the Program, Govplace obtained Letters of Supply from both Ingram Micro and HP, allowing it to resell HP products to the federal government. J.A. 973.

GSA has implicitly approved of Govplace's reliance on Ingram Micro's Program to demonstrate compliance with the GSA schedule contract requirements. Since 2003, GSA has conducted several "Contractor Administrative Visits" of Govplace to evaluate its compliance with GSA schedule contract requirements. J.A. 470. During those visits, Govplace has explained to GSA that it relies on the Ingram Program "for [Country of Origin (COO)] information and certifications for the items" listed in its GSA schedule. J.A. 470. Upon finishing its evaluation, GSA typically issues an Administrative Report Card. J.A. 470. In each of the Administrative Report Cards evaluating Govplace, GSA has determined that Govplace demonstrated compliance with the TAA. J.A. 470.

**B.**

Relator Brady Folliard brought a *qui tam* suit under the FCA, alleging that Govplace and other companies[1] sold products to the federal government that "did not originate in designated countries under the [TAA], and therefore are making material false statements and presenting false claims" to the federal government for payment. J.A. 75. Specifically, Appellant alleged that Govplace knowingly listed twenty-three products on its GSA schedule as having originated in the United States when they allegedly originated in non-designated countries, and that Govplace sold ten products that originated in non-designated countries. J.A. 115-119. Through three separate opinions and orders, the District Court ultimately denied Appellant's claims on the merits and thus granted Govplace summary judgment, while denying in part Appellant's discovery requests. We briefly summarize each of the three opinions as relevant to his appeal.

In its May 3, 2012 opinion, the District Court addressed Appellant's initial request for additional discovery pursuant to Rule 56(d) of the federal rules of civil procedure,[2] which he

---

[1] Appellant does not appeal the District Court's dismissal of the other defendants, so those claims are not before us.

[2] This rule states: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order."

FED. R. CIV. P. 56(d).

filed in connection with his opposition to Govplace's motion for summary judgment. *United States ex rel. Folliard v. Government Acquisitions, Inc.*, 858 F. Supp. 2d 79, 84–85 (D.D.C. 2012). In his Rule 56(d) request, Appellant asserted that Govplace had refused to respond to his discovery requests prior to filing its motion for summary judgment, J.A. 755, rendering him "unable to adequately respond to each of [Govplace's] purported undisputed material issues," J.A. 756.

The court rejected Appellant's request, describing it as "improperly framed" because he did not "state concretely why additional discovery is needed." *Government Acquisitions, Inc.*, 858 F. Supp. 2d at 85 (internal quotation marks omitted). The court did permit Appellant to amend his opposition to the summary judgment motion, "limited to the specific sales the complaint alleges as to each defendant." *Id.* The court also stated that "[i]f Folliard invokes Rule 56(d) in his opposition, the request must describe the necessary discovery with specificity." *Id.* Finally, the court left open the possibility of granting Appellant discovery regarding sales not specifically identified in his complaint, explaining that "if Folliard prevails as to either or both defendants on the specific sales alleged in the complaint, the question of further discovery will be ripe." *Id.*

Then, in a subsequent opinion, the District Court addressed Appellant's Rule 56(d) request in his amended opposition to Govplace's summary judgment motion. Through his amended Rule 56(d) request, Appellant sought additional discovery related to four categories of sales: (1) Govplace's sales under its FirstSource contract, (2) Govplace's sales in the "open market," (3) sales made by New Tech Solutions, Inc. ("New Tech") pursuant to an "authorized government teaming agreement" it had entered into with Govplace, and (4) Govplace's sales of HP products

that it had received from distributor Ingram Micro. *United States ex rel. Folliard v. Government Acquisitions, Inc.*, 880 F. Supp. 2d 36, 46–48 (D.D.C. 2012).

Govplace opposed Appellant's Rule 56(d) request, arguing that the first three categories of sales were exempt from TAA requirements. As to the FirstSource contract, Govplace claimed that it was awarded this contract from the federal government as a "Small Business Set-Aside." *Id.* at 46. Govplace asserted that such contracts are exempt from TAA requirements. *Id.*; 48 C.F.R. § 25.401(a)(1) ("This subpart does not apply to . . . Acquisitions set aside for small businesses[.]"). The District Court agreed. It stated that Govplace "provided the [FirstSource] contract as Exhibit E to its Motion for Summary Judgment," and that "Plaintiff fails to specify what particular discovery he desires regarding the FirstSource contract." *Government Acquisitions, Inc.*, 880 F. Supp. 2d at 46. After denying Appellant's Rule 56(d) request, the court granted Govplace summary judgment as to sales made under its FirstSource contract, reasoning that "[s]ince plaintiff offers absolutely no evidence refuting [Govplace's] motion for summary judgment, there is no genuine issue of material fact." *Id.*

As for its open market sale, Govplace contended that the product at issue "was not listed on its GSA Schedule Contract and was sold on the 'open market' without any representation of its COO." *Id.* at 48. It also asserted that "the sale totaled less than the TAA threshold of $193,000 at the time of sale." *Id.* Appellant responded "by simply requesting to depose [Govplace's affiant, Adrianne] Angle and a 30(b)(6) representative about '[Govplace's] Open Market Sales.' " *Id.* The court denied this request as well, explaining that he "fail[ed] to explain what precisely he wishe[d] to garner from a deposition and why it would be necessary for the litigation."

*Id.* The court then granted summary judgment as to the open market sale. *Id.*

The court also denied Appellant's Rule 56(d) request and granted Govplace summary judgment with respect to the sales made by New Tech pursuant to its teaming agreement with Govplace. Govplace had asserted that summary judgment was proper because it did not actually sell the product—it "was sold by a third party, [New Tech.]" *Id.* The District Court also denied this request. It stated that Appellant's "boilerplate discovery request" seeking information regarding Govplace's various transactions and "all other claims for exemptions from TAA requirements" was "inappropriately vague." *Id.* Crediting Govplace's "uncontroverted" assertions, the court granted it summary judgment as to the product sale by New Tech. *Id.*

The District Court did, however, grant Appellant's Rule 56(d) request with respect to the HP products that Govplace received from Ingram Micro. Govplace had claimed that it was entitled to summary judgment on sales of the HP products because Ingram Micro had expressly certified that the products complied with the TAA, and therefore, Govplace argued, even if the products did not comply with the TAA (which Govplace did not concede), it could not have "knowingly" made a false sale. *Id.* at 47. The court disagreed, finding "summary judgment to be premature regarding these five products until plaintiff has an adequate opportunity to conduct *focused* discovery on [Govplace's] reliance on Ingram Micro." *Id.* (emphasis in original).

Finally, in a third opinion, after Appellant had an opportunity to take discovery on the HP products Govplace received from Ingram Micro, the District Court addressed the remaining issue of whether Govplace's reliance on Ingram

Micro precluded a finding that Govplace knowingly sold HP products that did not comply with the TAA. The court emphasized that in order to establish "reckless disregard" under the FCA, Appellant was required to demonstrate not merely negligence on the part of Govplace, but a standard the court referred to as "gross negligence-plus." *United States ex rel. Folliard v. Govplace*, 930 F. Supp. 2d 123, 130 (D.D.C. 2013). The court explained that "absent some reason to question Ingram Micro's representations, it was not gross negligence-plus for Govplace not to separately certify that the products were TAA-compliant." *Id.* at 134. Appellant offered two reasons why Govplace's reliance was unreasonable, both of which the court rejected.

First, Appellant pointed to an email from an HP employee purportedly establishing that Govplace sold a product that was made in China, a non-designated country. *Id.* at 135. The court rejected this argument because Govplace received this email *after* the alleged sale occurred, and therefore the information supplied in the email did not have any bearing on Govplace's knowledge at the time of the sale. The court also rejected this argument because the email indicated that, while some versions of the product in question were made in China, there was a version that was made in a TAA-compliant country, and it was far from clear that the product Govplace sold was actually made in China. *Id.*

Second, Appellant relied on unsolicited price lists that Tech Data Corporation ("Tech Data"), a competitor of Ingram Micro, sent to Govplace. *Id.* These price lists, Appellant asserted, "show[] critical inconsistencies regarding the origin of the disputed products." *Id.* (internal quotation marks omitted). The court found this argument unpersuasive, pointing first to the fact that "[t]here is no indication that Govplace ever read or even opened these price lists," *id.* at

136, and thus this information could not have undermined Govplace's reliance on Ingram Micro's representations. In addition, and more fundamentally, the court noted that, in contrast to Ingram Micro's express certifications regarding the COO in its communications to resellers, the "Tech Data price lists, on their face, disclaim their reliability." *Id.* Thus, even if Govplace had reviewed the price list, Govplace could have disregarded the information given Tech Data's disclaimer. Concluding in turn that Govplace's "actions cannot amount to gross negligence plus, deliberate ignorance, or reckless disregard," the court granted Govplace summary judgment as to this remaining claim, thereby dismissing the complaint with prejudice. *Id.* at 137.

Appellant appeals the District Court's denial of his Rule 56(d) requests and its granting of summary judgment to Govplace, asserting that the court improperly limited the scope of his discovery and erred in its assessment of whether Govplace reasonably relied on Ingram Micro's certification.

## II.

Because summary judgment may not be granted until "all parties have 'had a full opportunity to conduct discovery,'" *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986)), we begin our analysis by determining whether the District Court abused its discretion in denying Appellant's Rule 56(d) discovery request. If so, then its summary judgment rulings were premature and thus cannot stand. *See id.*

We review "a district court's refusal to grant a Rule 56[d] request under an abuse of discretion standard." *Messina v. Krakower*, 439 F.3d 755, 762 (D.C. Cir. 2006). We review

*de novo* a district court's order granting summary judgment, *see, e.g.*, *U.S. ex rel. Bettis v. Odebrecht Contractors of Cal., Inc.*, 393 F.3d 1321, 1325-26 (D.C. Cir. 2005), and its factual findings for clear error, *Salahi v. Obama*, 625 F.3d 745, 750 (D.C. Cir. 2010).

## A.

### 1.

Under the abuse of discretion standard that governs discovery disputes, a trial court's authority is at its zenith. *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 580 (D.C. Cir. 2010); *see also Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir. 2007) ("The basis for our deferential, abuse-of-discretion review of district court discovery rulings is the recognition that supervising the to-and-fro of district court litigation falls within the expertise, in the first instance, of district courts and not courts of appeals."). Our decision in *Convertino* provides the standard for ruling on Rule 56(d) requests.[3] In *Convertino* we explained that the "movant must submit an affidavit which states with sufficient particularity why additional discovery is necessary." *Convertino*, 684 F.3d at 99 (quoting *Ikossi v. Dep't. of Navy,* 516 F.3d 1037, 1045 (D.C. Cir. 2008)) (internal quotation marks omitted). We also outlined the three criteria that the affidavit must satisfy: (1) "[I]t must outline the particular facts [the non-movant] intends to discover and describe why those facts are necessary to the litigation," *id.* at 99; (2) "it must explain 'why [the non-movant] could not produce the facts in opposition to the motion for summary

---

[3] The *Convertino* decision discusses then-Rule 56(f), which is now Rule 56(d). Rule 56(d) "carrie[d] forward without substantial change the provisions of former subdivision (f)." FED. R. CIV. P. 56 advisory committee's notes to 2010 Amendments.

judgment,' " *id.* at 99–100 (quoting *Carpenter v. Fed. Nat'l Mortg. Ass'n,* 174 F.3d 231, 237 (D.C. Cir. 1999)); and (3) "it must show the information is in fact discoverable," *id.* at 100.

Before beginning our discussion, we pause to clarify the import of the statement in *Convertino* that a Rule 56(d) request should be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence,"[4] *id.* at 99 (internal quotation marks omitted), a remark Appellant emphasizes in urging reversal. Appellant's Br. at 23, 25. Appellant appears to interpret this statement as conveying the principle that, so long as the non-movant has diligently pursued discovery, courts should routinely grant their request. This is incorrect because it suggests that the non-movant's diligence in pursuing discovery trumps the three requirements outlined in *Convertino*. While the non-movant's diligence is certainly a factor a district court may consider,[5] it is not a sufficient basis, standing alone, to grant a Rule 56(d) request. Instead, district courts must assess all the requirements discussed in *Convertino*.

It is also incorrect to conclude, as Appellant suggests, that district courts are supposed to grant Rule 56(d) requests more often than not. District courts should resolve each request based on its application of the *Convertino* criteria to

---

[4] We first announced this principle in *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995), quoting from the Fifth Circuit's decision in *Wichita Falls Office Assocs. v. Banc One Corp.,* 978 F.2d 915, 919 n.4 (5th Cir.1992). And it appears that the Fifth Circuit adopted this principle from the Third Circuit. *See, e.g.*, *Costlow v. United States*, 552 F.2d 560, 564 (3d Cir. 1977).

[5] A district court may find the non-movant's diligence relevant to the requirement that the non-movant "explain why he could not produce the facts in opposition to the motion for summary judgment." *Convertino*, 684 F.3d at 99-100.

the specific facts and circumstances presented in the request. Indeed, in tracing the genesis of the phrase "granted almost as a matter of course" to the Third Circuit's decision in *Ward v. United States*, 471 F.2d 667, 670 (3d Cir. 1973), it is clear that the court made this statement based on the specific facts before it, and thus was not placing a thumb on the scale in favor of non-movants.

In *Ward*, the court held that the district court should have granted the plaintiff's Rule 56(d) request in its negligence action against the United States, because "the facts respecting possible . . . negligence [were] solely in the possession of [the alleged tortfeasor]." *Id.* at 670; *see also Costlow v. United States*, 552 F.2d 560, 564 (3d Cir. 1977) ("[W]here the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course."). The Third Circuit thus reached the conclusion that when the facts giving rise to the cause of action are in the sole possession of the moving party, courts should grant the Rule 56(d) request "almost as matter of course."[6] It is easy to see why the *Convertino* factors would likewise lead to the same ruling under those facts.

Having clarified the Rule 56(d) criteria, we turn now to whether the District Court abused its discretion in resolving the discovery disputes in this case.

---

[6] We also note that similar language appears in Federal Rule of Civil Procedure 15(a)(2): a court "should freely give [a party] leave [to amend its complaint] when justice so requires." Yet there, as well, despite this permissive language, a district court must assess all factors we have deemed relevant. *See Atchinson v. Dist. of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996).

**2.**

The District Court denied Appellant's Rule 56(d) request with respect to (1) the products Govplace sold pursuant to its FirstSource contract, (2) its "open market" sale, and (3) a sale by New Tech, which had entered into a "teaming agreement" with Govplace. The court also confined Appellant's discovery, at least at the outset, to the sales specifically identified in Appellant's complaint. We find no abuse of discretion in any of those rulings.

Appellant claims that he was entitled to discovery related to sales by Govplace that were not specifically identified in his complaint, because the sales he identified in his complaint, he contends, were "representative" of other allegedly fraudulent sales. *See* Appellant Br. at 17. Appellant's argument is factually incorrect. He never alleged that the Govplace sales identified in his complaint were representative of other, yet-discovered Govplace transactions. Had he sought to allege as much, he clearly knew how to do so. His allegations against Govplace stand in stark contrast to his allegations against some of the other defendants, in which he expressly claimed that the transactions identified in his complaint were representative. *Compare, e.g.*, Pl.'s Second Am. Compl. ("SAC") ¶ 101 (J.A. 106-07) (asserting that the "following chart summarizes confirmed sales of products by Defendant Government Acquisitions to the US Government in September 2007 that did not originate in designated countries: These sales *represent* false claims presented by the defendant to the United States Government, and *further auditing will uncover more*") (emphasis added), *with* SAC ¶¶ 117-18 (J.A. 113-118) (identifying sales made by Govplace but nowhere does Appellant allege that these specific sales were "representative" of other procurements); *see also Government Acquisitions, Inc.*, 858 F. Supp. 2d at 85 & n.2

(stating that "Folliard's complaint identifies GAI's allegedly-improper sales as 'representative' of GAI's behavior," but observing in a footnote that "[n]o such allegation is made towards Govplace[,]" as the "complaint only lists a specific set of sales without reference to other sales to be discovered"). In conclusion, the District Court did not abuse its discretion in confining Appellant's discovery to the transactions listed in his complaint, especially considering that the court left open the possibility of permitting Appellant to engage in additional discovery "if [he] prevail[ed] as to either or both defendants on the specific sales alleged in the complaint." *Government Acquisitions, Inc.*, 858 F. Supp. 2d at 85.[7]

The court also did not abuse its discretion in denying in part Appellant's Rule 56(d) requests as to certain products. Turning to the first request the court denied, Appellant contends that the court should have granted discovery regarding the products Govplace sold under its FirstSource contract. Govplace had asserted before the District Court that

---

[7] Because Appellant's argument is factually incorrect, it is unnecessary to decide whether Appellant should have been afforded discovery regarding transactions that were not listed in his complaint. We note that our sister circuits have addressed this issue, with somewhat varying conclusions. *Compare U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 719 F.3d 31, 39 (1st Cir. 2013) (concluding that the district court did not abuse its discretion in "limit[ing] discovery to those allegations, contained in paragraph 211 of the amended complaint, which satisfied Rule 9(b)'s particularity requirement"), *with U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007) ("[W]here a relator pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government pursuant to that scheme, a relator may proceed to discovery on the entire fraudulent scheme.").

the FirstSource contract was exempt from TAA requirements because it was awarded as a 100% Small Business Set-Aside. *Government Acquisitions, Inc.*, 880 F. Supp. 2d at 46. Govplace also disclosed the contract to Appellant. *Id.* Nonetheless, in his Rule 56(d) request Appellant sought information related to the product—for example, the procurement number, the number of units sold, and the country of origin abbreviation of the products. J.A. 758. He also sought to depose Adrianne Angle, the contracts manager for Govplace, and a Rule 30(b)(6) representative, *see* FED. R. CIV. P. 30(b)(6), regarding "[Govplace's] FirstSource Contract and how transactions under that agreement are allegedly exempt from the TAA." J.A. 903. Appellant's argument misses the point.

If the contract is exempt from the TAA, then any products sold under the contract do not have to comply with the TAA. Accordingly, any discovery related to "transactions under that agreement" is immaterial. The discovery Appellant sought, then, " 'would [not] create a triable issue.' " *Convertino,* 684 F.3d at 99 (quoting *Byrd v. U.S. EPA*, 174 F.3d 239, 248 (D.C. Cir. 1999)). Appellant needed, instead, to produce facts that contradicted Govplace's claim that its contract is *exempt* from the TAA. He failed to do this. The District Court therefore correctly denied his request, and, there being no genuine dispute as to any material fact, granted Govplace summary judgment as to these products.

Appellant's request for discovery related to Govplace's sales to the federal government in the "open market" was also deficient. Govplace had claimed that the product at issue "was not listed on its GSA Schedule Contract and was sold on the 'open market' without any representation of its COO," and it also claimed that the sales "totaled less than the TAA threshold of $193,000 at the time of sale." *Government*

*Acquisitions, Inc.*, 880 F. Supp. 2d at 48. Govplace again disclosed the relevant contracts to Appellant. J.A. 711-730. Appellant responded by requesting to depose Adrianne Angle and a Rule 30(b)(6) representative regarding "GP's Open Market Sales." J.A. 903. This request lacked the particularity required by *Convertino*. Given that Appellant already had a copy of the relevant contracts, this vague request does not indicate why the depositions would reveal any information beyond what is apparent on the face of the contracts—that the product was not listed on Govplace's GSA schedule and the total value of sales ($181,358.00), J.A. 728, was below the then-applicable TAA threshold. *See Convertino*, 684 F.3d at 99 (stating that the non-movant must state with "sufficient particularity" why the discovery sought is necessary) (internal quotation marks omitted). Accordingly, the District Court correctly denied his request and granted Govplace summary judgment as to these products.

We turn briefly to the remaining request for discovery, which concerned the sale by New Tech pursuant to its authorized government teaming agreement with Govplace. Govplace argued that it was entitled to summary judgment on this sale because it did not actually sell the product—"it was sold by" New Tech, "a third party," who "made all relevant representations about the product." *Government Acquisitions, Inc.*, 880 F. Supp. 2d at 48. Govplace also asserted that the "product was not listed on its GSA Schedule Contract," *id.*, and it disclosed its contract with New Tech. J.A. 731-735. Appellant did not explain *at all*—let alone with sufficient particularity—why he sought discovery related to these products. As the District Court observed, nowhere does Appellant's "boilerplate discovery request" mention the relevant product by name, "New Tech, third party contract, or 'Teaming Agreement.'" *Government Acquisitions, Inc.*, 880 F. Supp. 2d at 48. Thus, we find no abuse of discretion in the

court's denial of this discovery request, and the court correctly granted summary judgment as to these products.

**B.**

We turn now to the remaining issue: whether Govplace reasonably relied on Ingram Micro's certification regarding the COO information for the four HP products it sold to the federal government. If Govplace's reliance was reasonable, the District Court correctly granted Govplace summary judgment as to these products, because Govplace did not "knowingly" sell HP products that originated from non-designated countries.

Under the FCA, a person acts " 'knowingly' by (1) having actual knowledge, (2) acting in deliberate ignorance, or (3) acting in reckless disregard." *U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 530 F.3d 980, 983 (D.C. Cir. 2008) (citing 31 U.S.C. § 3729(b)). "Reckless disregard under the FCA is 'an extreme version of ordinary negligence.' " *Id.* (quoting *United States v. Krizek,* 111 F.3d 934, 942 (D.C. Cir. 1997)). "To successfully oppose summary judgment," Appellant Folliard "must show that a reasonable factfinder, drawing all 'justifiable inferences' from the evidence in [his] favor, could find [that Govplace] at least recklessly disregarded the falsity of its claims." *Id.* (citations omitted). Applying these standards here, we conclude that Appellant's evidence fell short.

As we have discussed, *see supra* Part I.A., Govplace acquired the HP products at issue from Ingram Micro, the largest technology products distributor, by participating in Ingram Micro's Program. J.A. 468, 972-73. Through the Program, Ingram Micro expressly certifies to resellers, such as Govplace, that COO information is accurate, and more

generally that the products it distributes comply with the TAA.  J.A. 516.

Equally important, GSA has implicitly approved of Govplace's reliance on Ingram Micro's certification: Govplace has informed GSA during multiple Contractor Administrator Visits that it relies on Ingram Micro's Program in representing that the COO information for the items listed in its GSA schedule is accurate, and GSA's Administrative Report Cards evaluating Govplace have all concluded that Govplace has complied with the TAA.  J.A. 470.  We think a contractor like Govplace is ordinarily entitled to rely on a supplier's certification that the product meets TAA requirements.

Appellant contends, nonetheless, that Govplace's reliance on Ingram Micro's certifications in this case was unreasonable for primarily two reasons: (1) Govplace received an email from an HP employee indicating that some of Govplace's products were produced in China, a non-designated country, Appellant Br. at 28; and (2) a competitor of Ingram Micro sent Govplace an unsolicited price list which, according to Appellant, contradicts the COO information Govplace received from Ingram Micro, *id.*  We address, and ultimately reject, each argument in turn.

Appellant's reliance on the email from the HP employee is misplaced.  First and most fundamentally, as the District Court noted, "Govplace received this information *after* the alleged sales of Q5983A took place," therefore Appellant "cannot use this to show that Govplace acted knowingly, at the time of sale, for product number Q5983A."  *Govplace*, 930 F. Supp. 2d at 135 (emphasis in original).  Second, as the District Court also explained, the email demonstrates that multiple versions of the product were made; and while the

email indicates that some versions of the product were made in China, a non-designated country, "the products intended for the public sector were made in a TAA-compliant country." *Id.* Thus, this email did not undermine Govplace's reliance on Ingram Micro's certification.

Appellant also relies on an unsolicited price list that Tech Data, a competitor of Ingram Micro, sent to Govplace, purportedly showing inconsistencies in the origin of the disputed products. This argument is equally flawed. Govplace claimed that, "[b]ecause of [its] relationship with Ingram Micro and its participation in the GSA Pass Through Program, [it] had no need for Tech Data's unsolicited information and disregarded it." Appellee Br. at 50. And the District Court concluded that Appellant provided "no evidence—such as an email from a Govplace employee forwarding or commenting on a Tech Data list—that would show Govplace actually read these price lists." *Govplace*, 930 F. Supp. 2d at 136. We find no error in this factual conclusion.

Furthermore, unlike Ingram Micro's express certification regarding the COO information, Tech Data's price list includes disclaimers regarding the same information.[8] Therefore, even if Govplace had reviewed Tech Data's price list, it did not provide any basis for Govplace to question the

---

[8] *Compare* J.A. 978 ("Tech Data is not responsible for compliance with regulations, requirements or obligations associated with any contract resulting from this quotation unless said regulations, requirements or obligations have been passed to Tech Data and approved in writing by an authorized representative of Tech Data."), *with* J.A. 516 ("Ingram Micro passes through the following manufacturer certifications: . . . Products offered by the manufacturer are compliant with the Trade Agreements Act.").

accuracy of Ingram Micro's COO information.[9]    In conclusion, none of the evidence presented by Appellant undermines Govplace's reliance on Ingram Micro's certification regarding the COO information for the four HP products.

## III.

The District Court properly exercised its significant discretion in managing discovery when it denied in part Appellant's Rule 56(d) discovery request as to certain products.  With the request denied, there was not any genuine dispute as to material facts.  We therefore do not find any error in its grant of summary judgment to Govplace as to products it sold to the federal government under its FirstSource contract, in the open market, and as to the sale by New Tech pursuant to their government authorized teaming agreement with Govplace.

---

[9] Appellant also relied on the declaration of Dr. Jeremy Albright to demonstrate the unreasonableness of Govplace's reliance on Ingram Micro's certification.  Appellant Br. at 28.  Dr. Albright's declaration asserts that "Govplace sold 1,375 goods to the federal government that were manufactured in non-designated countries." J.A. 912.  In arriving at his conclusions, Dr. Albright relied in part on COO information produced in the course of another litigation that did not involve Govplace.  J.A. 913.  Thus, even assuming Dr. Albright's declaration is admissible, *see Govplace*, 930 F. Supp. 2d at 128-29 (discussing its "serious concerns" regarding the admissibility of Dr. Albright's declaration), and accurate, Appellee Br. at 59 ("[T]he Albright report failed to acknowledge, let alone even consider, the numerous exceptions to TAA compliance, including small business set aside contracts for small businesses . . . ."), it does not have any bearing on what Govplace knew at the time of the transactions because Appellant failed to produce evidence indicating that Govplace had knowledge of this COO information.

We conclude that Govplace reasonably relied on Ingram Micro's COO certification.  Appellant has thus failed to raise a genuine issue of material fact whether Govplace knowingly sold to the federal government products that did not comply with TAA requirements, a prerequisite to FCA liability. Accordingly, we affirm.

*So ordered.*