# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1654

_____

United States of America and State of Iowa, ex rel Susan Thayer

*Plaintiffs - Appellants*

v.

Planned Parenthood of the Heartland

*Defendant - Appellee*

United States of America; State of Iowa

*Interested parties*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: November 20, 2013
Filed: August 29, 2014

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Susan Thayer brought this *qui tam* action against Planned Parenthood of the
Heartland, Inc. (Planned Parenthood), alleging that Planned Parenthood violated the

False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, and the Iowa False Claims Act (IFCA), Iowa Code Ann. §§ 685.1-.7, by submitting false or fraudulent claims for Medicaid reimbursement. The district court dismissed her complaint for failure to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b). We affirm in part, reverse in part, and remand for further proceedings.

## I.  Background

Planned Parenthood is an Iowa non-profit corporation that provides reproductive healthcare services to patients, including Title XIX Medicaid-eligible patients. From 1991 to December 2008, Thayer was employed as the center manager of Planned Parenthood's clinic in Storm Lake, Iowa. From 1993 to 1997, Thayer also served as the center manager of Planned Parenthood's clinic in LeMars, Iowa. Planned Parenthood operated a total of seventeen clinics throughout Iowa during the period of Thayer's employment.

Thayer's action seeks to recover funds that Planned Parenthood allegedly obtained in violation of the FCA and the IFCA. Thayer's second amended complaint (hereinafter the complaint), alleges that Planned Parenthood wrongfully obtained Medicaid reimbursements for prescriptions and services that either were not reimbursable or were not reimbursable in the amounts claimed. Specifically, Thayer alleges that Planned Parenthood: (1) filed claims for unnecessary quantities of birth control pills that often were prescribed without examinations or were not received by Planned Parenthood patients; (2) sought reimbursement for abortion-related services in violation of federal law and instructed patients who experienced abortion-related complications to give false information to medical professionals at other hospitals, causing those medical professionals to unknowingly file claims for services performed in connection with abortions; (3) filed claims for the full amount of services that had already been paid, in whole or in part, by "donations" Planned Parenthood coerced from patients; and (4) filed claims for more expensive services

than were actually performed by engaging in a process known as "upcoding." Thayer alleges that all of Planned Parenthood's clinics participated in these four fraudulent schemes from early 2006 to December 2008. The complaint, however, does not include any representative examples of the false claims that Thayer alleges that Planned Parenthood submitted for reimbursement.

Planned Parenthood moved to dismiss the complaint, arguing that Thayer failed to allege fraud with particularity as required by Rule 9(b). The district court granted Planned Parenthood's motion, concluding that Thayer failed to meet the pleading requirements of Rule 9(b) as articulated in United States ex rel. Joshi v. St. Luke's Hospital, Inc., 441 F.3d 552 (8th Cir. 2006), because she failed "to provide a single specific example of a particular fraudulent claim Planned Parenthood submitted to the government, let alone any representative examples." D. Ct. Order of Dec. 28, 2012, at 6.

## II. Discussion

We review *de novo* a district court's decision to dismiss a complaint under Rule 9(b). In re Baycol Prods. Litig., 732 F.3d 869, 874 (8th Cir. 2013). The FCA imposes liability on those who knowingly "present false claims, or cause false claims to be presented, to the government for payment or approval; [knowingly] use false statements, or cause false statements to be used, to get a false claim paid or approved by the government; or conspire to defraud the government, among other things."[1] United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp., 690 F.3d 951, 955 (8th Cir. 2012) (citing 31 U.S.C. § 3729(a)(1)-(3)). Under the FCA, private individuals are permitted "to bring a civil action in the name of the United States

---

[1]Because the FCA and the IFCA are nearly identical, case law interpreting the FCA also applies to the IFCA. See Eilbert v. Pelican (In re Eilbert), 162 F.3d 523, 526 (8th Cir. 1998).

against those who violate the [FCA]'s provisions." Baycol Prods. Litig., 732 F.3d at 874. Liability under the FCA attaches "not to the underlying fraudulent activity, but to the claim for payment." Id. at 875 (quoting Costner v. URS Consultants, Inc., 153 F.3d 667, 677 (8th Cir. 1998)).

## A. Pleading Standard Under the FCA

"Because the FCA is an anti-fraud statute, complaints alleging violations of the FCA must comply with Rule 9(b)." Joshi, 441 F.3d at 556. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud[.]" "This particularity requirement demands a higher degree of notice than that required for other claims." United States ex rel. Costner v. United States, 317 F.3d 883, 888 (8th Cir. 2003).

We explained in Joshi that to satisfy Rule 9(b)'s particularity requirement, "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." 441 F.3d at 556. In other words, "the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." Id. (quoting Costner, 317 F.3d at 888). Moreover, we stated that although an FCA complaint need not include the "specific details of *every* alleged fraudulent claim" when a relator alleges that a defendant engaged in a systematic practice or scheme of submitting fraudulent claims, the complaint "must provide *some* representative examples of [the defendant's] alleged fraudulent conduct, specifying the time, place, and content of [the defendant's] acts and the identity of the actors." Id. at 557.

Thayer concedes that she did not provide any representative examples of the false claims in the complaint. She argues, however, that neither Rule 9(b) itself nor Joshi requires that representative examples be pleaded in every FCA complaint that

alleges a systematic practice or scheme of submitting false claims.  We agree, and conclude that Joshi's representative-examples requirement need not be satisfied with respect to some portions of the complaint.

Dr. Joshi was an anesthesiologist who had practiced at St. Luke's Hospital from 1989 to 1996.  Id. at 554.  His April 2004 *qui tam* action against the hospital and the hospital's chief of anesthesiology alleged, among other things, that the hospital had systematically violated the FCA over a sixteen-year period by seeking Medicare reimbursements at higher rates than those to which it was entitled and by submitting claims for services that were not performed and supplies that were not provided.  Id. at 554, 557.  He did not identify the details of any of the false claims in his complaint but instead alleged that every claim submitted was fraudulent.  Id. at 554-56.  In concluding that the complaint failed to satisfy Rule 9(b), we explained that "Dr. Joshi's allegation that 'every' claim submitted by St. Luke's was fraudulent lack[ed] sufficient 'indicia of reliability[,]'" id. at 557, because, as an anesthesiologist rather than a member of the hospital's billing department, he failed to provide the factual basis for his "knowledge concerning the alleged submission of fraudulent claims," id. at 558.  We held that to satisfy Rule 9(b), he was required to plead at least some representative examples of the false claims.  Id. at 557.

Unlike Dr. Joshi, who had no direct connection to the hospital's billing or claims department and could only speculate that false claims were submitted, Thayer was the center manager for two of Planned Parenthood's clinics, oversaw Planned Parenthood's billing and claims systems, and was able to plead personal, first-hand knowledge of Planned Parenthood's submission of false claims.  In these circumstances, we find persuasive the approach of those circuits that have concluded that a relator can satisfy Rule 9(b) by "alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that

-5-

claims were actually submitted."[2]  United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009); see also Chesbrough v. VPA, P.C., 655 F.3d 461, 471 (6th Cir. 2011); Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998-99 (9th Cir. 2010); United States ex rel. Lemmon v. Envirocare of Utah, Inc., 614 F.3d 1163, 1172 (10th Cir. 2010); cf. United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 457 (4th Cir. 2013) (indicating that a relator need not identify individual false claims in order to satisfy Rule 9(b) if the "specific allegations of the defendant's fraudulent conduct necessarily led to the plausible inference that false claims were presented to the government[,]" but that representative examples are required if a defendant's actions "*could* have led, but *need not necessarily* have led, to the submission of false claims"), cert. denied, 134 S. Ct. 1759 (2014); United States ex rel. Duxbury v. Ortho Biotech Prods., L.P., 579 F.3d 13, 29 (1st Cir. 2009) (explaining that in *qui tam* actions in which the defendant allegedly caused third parties to file false claims, "a relator could satisfy Rule 9(b) by providing 'factual or statistical evidence to strengthen the inference of fraud beyond possibility' without necessarily providing details as to each false claim"); United States ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 854 (7th Cir. 2009) ("We don't think it essential for a relator to produce the invoices (and accompanying representations) at the outset of the suit."); Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam) (stating that to satisfy Rule 9(b), an FCA "complaint must contain 'some

_____

[2]Planned Parenthood argues that because we have continued to require relators to plead representative examples of the false claims in order to satisfy Rule 9(b) in cases following Joshi, we should not excuse Thayer's failure to plead representative examples.  See United States ex rel. Dunn v. N. Mem'l Health Care, 739 F.3d 417, 420 (8th Cir. 2014); Baycol Prods. Litig., 732 F.3d at 878-80; United States ex rel. Ketroser v. Mayo Found., 729 F.3d 825, 829 (8th Cir. 2013); United States ex rel. Vigil v. Nelnet, Inc., 639 F.3d 791, 797-98 (8th Cir. 2011); United States ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 822-25 (8th Cir. 2009).  Like Joshi, however, these cases are distinguishable because the relators did not have access to the defendants' billing systems and were not able to plead personal knowledge of the defendants' submission of false claims.

indicia of reliability'" to support the allegation that a false claim was submitted to the government).

As Judge Higginbotham explicated in Grubbs, Rule 9(b) "is context specific and flexible and must remain so to achieve the remedial purpose of the False Claim Act." See 565 F.3d at 190. Allowing a relator to satisfy Rule 9(b) by pleading the "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted" fulfills the objectives of Rule 9(b) "without stymieing legitimate efforts to expose fraud." Id. These objectives include both providing the defendant with adequate notice of the relator's claims and protecting the defendant from baseless claims. Id. at 190-91. We agree that "[s]tating 'with particularity the circumstances constituting fraud' does not necessarily and always mean stating the contents of a bill." Id. at 190.

Given Rule 9(b)'s objective of protecting defendants from baseless claims, relators whose allegations lack sufficient indicia of reliability should be required to plead representative examples of the false claims because their allegations are more likely to be unfounded. In contrast, a relator who provides sufficient indicia of reliability to support her allegations that false claims were submitted, such as by pleading details about the defendant's billing practices and pleading personal knowledge of the defendant's submission of false claims, fulfills Rule 9(b)'s objective of protecting the defendant from baseless claims. Accordingly, we conclude that a relator can satisfy Rule 9(b) without pleading representative examples of false claims if the relator can otherwise plead the "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Id. To satisfy the "particular details" requirement of our holding, however, the relator must provide sufficient details "to enable the defendant to respond specifically and quickly to the potentially damaging allegations." United States ex rel. Costner v. United States, 317 F.3d 883, 888 (8th Cir. 2003).

## B. The Complaint

Applying this standard to the allegations in the complaint, we conclude that Thayer has pled sufficiently particularized facts to support her allegations that Planned Parenthood violated the FCA by filing claims for (1) unnecessary quantities of birth control pills, (2) birth control pills dispensed without examinations or without or prior to a physician's order, (3) abortion-related services, and (4) the full amount of services that had already been paid, in whole or in part, by "donations" Planned Parenthood coerced from patients. Thayer adequately alleges the particular details of these schemes, such as the names of the individuals that instructed her to carry out these schemes, the two-year time period in which these schemes took place, the clinics that participated in these schemes, and the methods by which these schemes were perpetrated. Moreover, she alleges that her position as center manager gave her access to Planned Parenthood's centralized billing system, pleads specific details about Planned Parenthood's billing systems and practices, and alleges that she had personal knowledge of Planned Parenthood's submission of false claims. Thayer's claims thus have sufficient indicia of reliability because she provided the underlying factual bases for her allegations. See Corsello, 428 F.3d at 1012-14 (describing the indicia of reliability required under Rule 9(b)). Accordingly, because Thayer pleaded the particular details of these schemes as well as the bases for her knowledge of these details, these allegations are sufficient to withstand Rule 9(b)'s particularity requirement.

Thayer's allegations that Planned Parenthood violated the FCA by causing other hospitals to unknowingly submit claims for abortion-related services and by upcoding, however, are not sufficient to satisfy Rule 9(b). We address these allegations in turn.

### 1. Causing Other Hospitals to Submit False Claims

As set forth above, Thayer contends that Planned Parenthood violated the FCA by instructing patients who experienced abortion-related complications to give false information to medical professionals at other hospitals, causing those medical professionals to unknowingly file claims for services performed in connection with abortions. Specifically, Thayer alleges that Planned Parenthood's clinic personnel were instructed to tell patients who received abortions "to report to the local hospital emergency room in case of hemorrhage or other serious side effect and to advise local hospital emergency room personnel that [they] had suffered a 'miscarriage' and to seek Title XIX-Medicaid coverage for such 'miscarriage.'" Thayer further alleges that she learned that false claims were subsequently filed by local hospitals "as a direct result of Planned Parenthood['s] . . . instructions to clients to falsely tell the hospitals that they were merely suffering a miscarriage." These allegations fail to satisfy Rule 9(b) because they lack sufficient indicia of reliability. Thayer does not allege that she had access to the billing systems of the unidentified local hospitals, nor does she contend that she had knowledge of their billing practices. As a result, Thayer is only able to speculate that false claims were submitted by these hospitals. Because Thayer failed to provide a factual basis for her knowledge of these alleged false claims, we are unable to infer that false claims were submitted. Accordingly, we affirm the dismissal of these allegations.

### 2. Upcoding

The complaint alleges that Planned Parenthood scheduled large numbers of clients for visits during the short windows of time in which physicians would be available at the clinics. Thayer contends that Planned Parenthood then violated the FCA by "bill[ing] visits . . . as problem visits, using CPT codes 99212-99215 (for existing patients) and 99201-99205 (for new patients) for services performed during this window of time even though the physician would usually only briefly look into

-9-

the room from the hallway at the client or not even see the client[.]"  In addition, Thayer alleges that Planned Parenthood used problem codes in billing even "where the client had no medical problem and was only seeking family planning services[.]"  These allegations also fail to satisfy Rule 9(b).  Although Thayer is not required to plead representative examples of the false claims, she still is required to plead the particular details of the scheme to submit false claims.  Thayer's conclusory and generalized allegations that Planned Parenthood violated the FCA by engaging in upcoding do not meet this requirement.  For example, Thayer failed to allege when or how often upcoding took place at the various clinics, who or how many physicians engaged in upcoding, or what types of services were involved in the upcoding scheme.  Moreover, instead of alleging what monies were fraudulently obtained as a result of the alleged upcoding, Thayer merely contends that "the United States and Iowa have been damaged in an amount to be proven at trial."  We thus affirm the dismissal of Thayer's upcoding allegations.[3]

## C.  Federal Rule of Civil Procedure 12(b)(6)

In addition to meeting Rule 9(b)'s particularity requirement, complaints alleging violations of the FCA "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Vigil, 639 F.3d at 796 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Independent of its argument that Thayer's allegations fail to satisfy Rule 9(b), Planned Parenthood asserts that Thayer's claims should be dismissed because she failed to state FCA claims as a matter of law.  Specifically, Planned Parenthood argues that the complaint should be dismissed because (1) her allegations are based on alleged regulatory violations that cannot serve as bases for liability under the FCA, (2) she failed to identify regulations

---

[3]In light of this conclusion, we need not address Planned Parenthood's alternative argument that, at a minimum, the upcoding allegations should be dismissed because Thayer failed to file those allegations under seal.

that prohibit Planned Parenthood's practices, or (3) the applicable regulations actually permit Planned Parenthood's conduct. The district court did not consider these arguments in light of its decision to dismiss the complaint on the basis of Thayer's failure to plead representative examples of the false claims. On remand, the district court should consider whether any of Thayer's remaining allegations survive these challenges. Our holding with respect to the Rule 9(b) issue, however, should not be read as in any way expressing a view on Planned Parenthood's Rule 12(b)(6) arguments.

## III. Conclusion

The judgment is affirmed in part and reversed in part. The case is remanded to the district court for further proceedings consistent with this opinion.

_____